Gerald **WENDINGER,** et al., Appellants,

v.

**FORST FARMS, INC.,** et al., **Respondents,**

**WAKEFIELD PORK, INC.,** Respondent.

No. CX–02–1603.

Court of Appeals of Minnesota.

June 10, 2003.

---

Thomas G. Dunnwald, Dunnwald & Peterson, P.A., Minneapolis, MN, for appellants.

Clark A. Tuttle III, Berens, Rodenberg & O'Connor, Chtd., New Ulm, MN, for respondents Forst Farms, Inc., et al.

Gary W. Koch, Dustan J. Cross, Sara N. Wilson, Gislason & Hunter LLP, New Ulm, MN, for respondent Wakefield Pork, Inc.

Mike Hatch, Attorney General, Craig L. Engwall, Assistant Attorney General, St. Paul, MN, for amicus curiae State of Minnesota.

Susan E. Stokes, David R. Moeller, Carl L. Flink, Farmers' Legal Action Group, Inc., St. Paul, MN, for amicus curiae Land Stewardship Project.

James P. Peters, Karna M. Peters, Peters & Peters, PLC, Alexandria, MN, for amicus curiae MN COACT.

Considered and decided by LANSING, Presiding Judge, KLAPHAKE, Judge, and HUDSON, Judge.

## OPINION

LANSING, Judge.

On cross-motions for summary judgment in a dispute involving allegations of nuisance, negligence, and trespass against a confined-animal feeding operation, the district court granted summary judgment for Jerome, Alma, and James Forst, Forst Farms, Inc., and Wakefield Pork, Inc. The district court did not decide the summary judgment motion of Gerald and Julie Wendinger on the issue of agency. The Wendingers appeal, and we affirm in part, reverse in part, and remand.

## FACTS

Julie and Gerald Wendinger own land in rural Nicollet County near a confined-animal feeding operation run by the Forst family (the Forsts), as Forst Farms, Inc. (Forst Farms). The Wendingers and Forsts are long-time residents of the area. The Forsts have farmed their land since the 1960s, and Gerald Wendinger was born on and farmed the Wendinger land until the 1970s. The Wendingers built a new home on that land in 1984.

In 1994, the Forsts entered into an agreement with Wakefield Pork, Inc., (Wakefield) under which the Forsts agreed to construct and operate a confined-animal feeding operation for housing and feeding pigs owned by Wakefield. The operation stores the liquid animal waste in a two-stage outdoor concrete manure lagoon from which it is pumped and spread on area fields each autumn. The Forsts had previously used a "scrape and haul" system with their livestock in which the waste and straw used in the stalls is hauled away in solid form. The new feeding facility was put into operation in 1994.

The manure lagoon was pumped out for the first time in the fall of 1995 and around that time the Wendingers complained about odors they believed to be emanating from the Forst operation. Between late 1995 and 2000, the Wendingers filed scores of further odor complaints with various state and local authorities. State and local environmental officials conducted a series of investigations in response to the complaints.

In the summer of 2001, the Wendingers sued the Forsts, Forst Farms, and Wakefield, stating claims in negligence, nuisance, and trespass and seeking injunctive and compensatory relief. The district court dismissed the trespass claim for failure to state a legally sufficient claim and dismissed the negligence and nuisance claims after granting summary judgment for the defendants. The court did not rule on the Wendingers' motion for summary judgment recognizing Wakefield's agency over the Forst Farms confined-feeding operation. The Wendingers now appeal.

## ISSUES

I. Do invasive odors give rise to an action in trespass?

II. Must a plaintiff alleging nuisance prove that the nuisance harm is the result of a wrongful act?

III. Does Minn.Stat. § 561.19, subd. 2(a) (2002), impose an absolute two-year limitation on nuisance claims against agricultural operations or provide an affirmative defense against such claims for an agricultural operation in compliance with "generally accepted agricultural practices"?

IV. Does Minn.Stat. § 561.19, subd. 2(b) (2002), provide the standard of care governing negligence claims against agricultural operations?

V. Is Forst Farms, Inc., an agent of Wakefield Pork, Inc., as a matter of law?

## ANALYSIS

### I

■ The district court dismissed the Wendingers' trespass claim on grounds that invasive odors can give rise only to an action for nuisance, not trespass. When reviewing a district court's dismissal of an action for failure to state a claim on which relief can be granted, we determine only whether the complaint sets forth a legally sufficient claim for relief. *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn.1997).

■ "Trespass encompasses any unlawful interference with one's person, property, or rights, and requires only two essential elements: a rightful possession in the plaintiff and unlawful entry upon such possession by the defendant." *Special Force Ministries v. WCCO Television*, 584 N.W.2d 789, 792–93 (Minn.App.1998) (citations omitted), *review denied* (Minn. Dec. 15, 1998). The Wendingers argue that the odors from the feeding operation physically invaded their land because the odors migrated onto the property in the form of airborne particulate matter. A claim of trespass by airborne particles, they contend, should be treated the same as claims of trespass by errant bullets, which have been upheld by Minnesota appellate courts. *See Whittaker v. Stangvick*, 100 Minn. 386, 111 N.W. 295 (1907); *Citizens for a Safe Grant v. Lone Oak Sportsmen's Club, Inc.*, 624 N.W.2d 796, (Minn.App. 2001).

A number of jurisdictions have abandoned the historical distinction between direct and indirect invasions separating nuisance and trespass claims and have applied principles of trespass to cases in which a plaintiff claims invasion by particulate matter. *See, e.g., Borland v. Sanders Lead Co.*, 369 So.2d 523 (Ala.1979); *Martin v. Reynolds Metals Co.*, 221 Or. 86, 342 P.2d 790 (1959); *Bradley v. Am. Smelting & Refining Co.*, 104 Wash.2d 677, 709 P.2d 782 (1985). Minnesota, however, has not recognized trespass by particulate matter. Current Minnesota law was summarized in a 1989 case involving allegations of nuisance and trespass caused by noxious fumes from a waste-water treatment plant: "[a]lthough some of the traditional distinctions between nuisance and trespass have become blurred and uncertain, the distinction now accepted is that trespass is an invasion of the plaintiff's right to exercise exclusive possession of the land and nuisance is an interference with the plaintiff's use and enjoyment of the land." *Fagerlie v. City of Willmar*, 435 N.W.2d 641, 644 n. 2 (Minn.App.1989) (citing D. Dobbs, *Prosser and Keeton on Torts* at 622 (5th ed.1984)).

Like the fumes in *Fagerlie*, the odors of which the Wendingers complain interfere with the use and enjoyment of their land, not with their exclusive possession of it. We accordingly conclude that the district court did not err in dismissing the Wen-

dingers' trespass claim for failure to state a legally sufficient claim.

## II

 The Wendingers also challenge the district court's grant of summary judgment on their nuisance claim. Specifically, they contend that the district court erred as a matter of law in holding that a claim of private nuisance requires proof of "wrongful conduct" by the defendant. As a legal question, we review de novo the district court's determination of the necessary elements of a cause of action. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984) (explaining that a reviewing court exercises independent review on a purely legal issue).

 Nuisance is defined by statute as "[a]nything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Minn.Stat. § 561.01 (2002). An action in nuisance "may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance." *Id.* In applying the statute in this case, the district court read into it an additional requirement of "wrongful conduct," drawn from language in *Highview N. Apartments v. County of Ramsey,* 323 N.W.2d 65, 70–71 (Minn.1982).

*Highview* involved a municipal drainage system that diverted a watershed into a storm sewer system and caused the flooding of the plaintiffs' basements. The municipalities, held liable for damages under a nuisance theory, argued on appeal that the district court erred in assigning liability on the basis they had "maintained something which is clearly an unreasonable thing in view of the surroundings." *Id.* at 73. The municipalities contended that without proof of negligence, unlawful conduct, or the creation of a dangerous situation, there could be no nuisance. *Id.* at 70.

The supreme court rejected the municipalities' argument and held that the nuisance statute "defines a nuisance in terms of the resultant harm rather than in terms of the kind of conduct by a defendant which causes the harm." *Id.* The court went on to explain that "there must be some kind of conduct causing the nuisance harm which is 'wrongful'." *Id.* at 70–71 (citing *Randall v. Vill. of Excelsior,* 103 N.W.2d 131, 134, 258 Minn. 81, 85 (1960)). By enclosing the word "wrongful" in quotation marks preceding the *Randall* citation, the court signaled that the word was to have the same meaning it had in *Randall.* In *Randall* the supreme court used the word "wrongful" to describe the type of injury involved in a nuisance claim: "It is elementary that 'nuisance' denotes the wrongful invasion or infringement of a legal right or interest * * * and includes intentional harms and harms caused by negligence, reckless or ultrahazardous conduct." *Randall,* 103 N.W.2d at 134, 258 Minn. at 85 (citation omitted). Used in this way, the word "wrongful" is meant simply to limit the scope of nuisance liability to situations in which the defendant can be said to be at fault. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 72 (1987) (defining "at fault" to include "responsible for a wrong committed"). The holding in *Highview* confirms this use of wrongful because the defendants were held liable for nuisance harm without proof that the harm resulted from unlawful conduct by them. Rather, nuisance liability was premised solely on the municipalities' fault under the reasonable-use doctrine governing the drainage of surface waters.

Applying the principles of *Randall* and *Highview* to this case, we believe that a plaintiff who presents evidence that the defendant intentionally maintains a condition that is injurious to health, or indecent or offensive to the senses, or which obstructs free use of property, states an actionable claim in nuisance. The Wendingers supported their nuisance claim with evidence that the Forsts were aware of their operation's alleged impact on the Wendingers' use and enjoyment of their land as early as 1996. The Forsts do not contest this point. That evidence is sufficient to demonstrate intentional conduct. *See* Dan B. Dobbs, *The Law of Torts* § 464 at 1325 (2000) (explaining that a defendant intentionally causes nuisance harm when he maintains the condition causing the harm after having been apprised of its effect upon the plaintiff's use and enjoyment of his land). We therefore conclude that the district court erred as a matter of law in holding that an allegation of nuisance must be supported by evidence that the defendant caused the nuisance harm by an independent wrongful act.

## III

The legislature has shielded agricultural operations from nuisance liability in certain circumstances. This protection is set forth in Minn.Stat. § 561.19, subd. 2, which reads:

Subd. 2. Agricultural operation not a nuisance.

(a) An agricultural operation is not and shall not become a private or public nuisance after two years from its established date of operation if the operation was not a nuisance at its established date of operation.

(b) An agricultural operation is operating according to generally accepted agricultural practices if it is located in an agriculturally zoned area and complies with the provisions of all applicable federal and state statutes and rules or any issued permits for the operation.

(c) The provisions of this subdivision do not apply:

(1) to a condition or injury which results from the negligent or improper operation of an agricultural operation or from operations contrary to commonly accepted agricultural practices or to applicable state or local laws, ordinances, rules, or permits;

(2) when an agricultural operation causes injury or direct threat of injury to the health or safety of any person;

* * *.

Minn.Stat. § 561.19, subd. 2 (2002). The district court interpreted these provisions to impose a two-year limitation on nuisance suits against agricultural operations and to bar nuisance claims against operations that are conducted according to "generally accepted agricultural practices."

Because it presents a question of law, we review the district court's construction of Minn.Stat. § 561.19 de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). To determine whether a statute has been correctly applied, we focus on the words of the statute to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2002). If the meaning is plain and unambiguous we apply that meaning as a manifestation of legislative intent. *Kersten v. Minn. Mut. Life Ins. Co.*, 608 N.W.2d 869, 874–75 (Minn.2000). Plain meaning embodies ordinary use of the language in the context of the whole-act structure, applying the usual conventions of grammar and syntax. *Occhino v. Grover*, 640 N.W.2d 357, 359–60 (Minn.App. 2002), *review denied* (Minn. May 28, 2002). If the meaning of statutory language is not plain, we resolve ambiguity by looking to

other factors that evince legislative intent and, when applicable, agency interpretation and extrinsic-source canons. *Id.* at 360; Minn.Stat. § 645.16 (listing factors for ascertaining legislative intent).

### Timeliness of nuisance claim

Minn.Stat. § 561.19, subd. 2(a), states that an agricultural operation shall not become a nuisance once it has been established for two years *"if the operation was not a nuisance at its established date of operation."* Minn.Stat. § 561.19, subd. 2(a) (emphasis added). Thus, under the plain meaning of the act, a court considering the timeliness of a nuisance claim against a facility that has been in operation for more than two years must determine whether the complaint alleges the operation was a nuisance when established. The Wendingers alleged in their complaint that the Forst operation produced extremely noxious odors and gases "from the beginning." The district court made no finding on this allegation. Without a determination that the allegation is unsupported by evidence, the district court did not have a basis to conclude that the Wendingers' nuisance claim was barred under subdivision 2(a).

### "Generally accepted agricultural practices"

The district court explained in its summary judgment memorandum that when applying Minn.Stat. § 561.19, subd. 2, the "focus is to be upon whether the operation is operating according to generally accepted agricultural practices, defined to be an operation located in an agriculturally zoned area which complies with the provisions of all applicable federal and state statutes and rules or any issued permits for the operation." The court then went on to suggest that compliance with generally accepted agricultural prac-

tices provides an agricultural operation with an affirmative defense to a nuisance claim. Based on the language in its memorandum, the court apparently read subdivision 2(b) as the source of this affirmative defense.

Subdivision 2(b), however, only provides a definition of the phrase "operating according to generally accepted agricultural principles;" it does not connect that definition to any operative section. Neither subdivision 2(b) nor any other part of the statute explains the purpose of the definition, and, indeed, the phrase "generally accepted agricultural practices" appears in no other Minnesota law or regulation. A possible explanation is that subdivision 2(b) was intended to provide a definition for *"commonly* accepted agricultural practices" in subdivision 2(c). (Emphasis added.) Even if that were the case, however, subdivision 2(c) states *exceptions* to the limitations on nuisance action and therefore would provide no support for construing the definition to give rise to an affirmative defense.

Although we are unable to discern the legal significance of subdivision 2(b), the plain language of the provision creates no affirmative defense for operations in compliance with generally accepted agriculture practices. We therefore reject the district court's conclusion that the Wendingers' nuisance claim may be considered only to the extent that it alleges nuisance harm caused by negligence.

### IV

The district court held that Minn. Stat. § 561.19, subd. 2(b), states a duty of care applicable to a hog-confinement operator and concluded that the Wendingers' claim in negligence failed as a matter of law because the Wendingers offered no evidence that the Forst facility deviated from generally accepted agricultural prac-

tices. The determination of the proper standard of care presents a question of law, which we review de novo. *Bondy v. Allen,* 635 N.W.2d 244, 250 (Minn.App. 2001).

■■■■ A legal duty of care is imposed either by the common law rule requiring exercise of ordinary care not to injure another, or by a statute designed for the protection of others. *Lynghaug v. Payte,* 247 Minn. 186, 194, 76 N.W.2d 660, 665–66 (1956). While violation of a statutory duty may in certain circumstances constitute negligence per se, *see, e.g., Scott v. Indep. Sch. Dist. 709, Duluth,* 256 N.W.2d 485, 488–89 (Minn.1977), the inverse proposition—that compliance with a statute precludes a finding of negligence—is not the law. A statutory standard "is no more than a minimum, and it does not necessarily preclude a finding that the actor was negligent in failing to take additional precautions." *Blasing v. P.R.L. Hardenbergh Co.,* 303 Minn. 41, 49, 226 N.W.2d 110, 115 (1975) (quoting William L. Prosser, *Handbook of the Law of Torts* (4th ed.1971) § 36 at 203); *see also Blatz v. Allina Health Sys.,* 622 N.W.2d 376, 386 (Minn.App.2001) (noting that compliance with statute regulating conduct does not provide conclusive proof that person exercised due care). We therefore conclude that the district court erred as a matter of law in dismissing the Wendingers' claim without determining whether it alleged a legally sufficient cause of action in negligence.

## V

■■■■ The Wendingers sought summary judgment on the question of whether the Forsts and Forst Farms are agents of Wakefield Pork, so that Wakefield would be liable for any negligence in the operation of the Forst facility or resulting nuisance harm under a theory of respondeat superior. The district court did not rule on the Wendingers' motion, apparently because of its determination that the Wendingers' substantive claims were insufficient as a matter of law.

Wakefield contends that the lack of a district court ruling on the agency question places that issue beyond the scope of this appeal. But the scope of appellate review is not strictly limited to the judgment or order appealed from; it also includes "any other matter as the interest of justice may require." Minn. R.App. P. 103.04. Determining the agency question in this appeal would serve the interests of justice by resolving an important question of liability, thereby possibly saving one of the defendants the time and cost of defending this action, at least with respect to certain claims. Nevertheless, we are prevented from considering the question by the lack of factual findings on the relationship between Forst Farms and Wakefield. *See Vacura v. Haar's Equip., Inc.,* 364 N.W.2d 387, 391 (Minn.1985) (stating that existence of agency relationship is question of fact). The parties' appellate briefs make clear that the factual basis of the Forst Farms–Wakefield relationship is contested and must therefore be subject to further fact-finding.

## DECISION

Because odors do not interfere with the exclusive possession of land, an allegation that a confined-animal feeding operation emits invasive odors does not state a claim for trespass. Invasive odors may support a claim in nuisance, however, if they rise to the level of nuisance harm and are caused by a condition intentionally maintained by the defendant. The plain meaning of Minn.Stat. § 561.19, subd. 2, supports neither the imposition of an absolute two-year limitation on nuisance claims against agri-

cultural operations nor the creation of an affirmative defense against such claims for operations that comply with "generally accepted agricultural practices." Finally, an agricultural operation's compliance with generally accepted agricultural practices does not preclude a finding of negligence.

**Affirmed in part, reversed in part, and remanded.**