**WAKEFIELD PORK, INC., Appellant,**

v.

**RAM MUTUAL INSURANCE COMPANY, Respondent.**

No. A06–847.

Court of Appeals of Minnesota.

May 15, 2007.

Dustan J. Cross, Mark S. Ullery, Gislason & Hunter, L.L.P., New Ulm, MN, for appellant.

Thomas D. Jensen, William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for respondent.

Edward J. Laubach, Jr., Phillip L. Kunkel, Christopher W. Harmoning, Gray, Plant, Mooty, Mooty & Bennett, P.A., Cloud, MN, for amici curiae Minnesota Department of Agriculture; Minnesota Pork Producers Association; AgStar Financial Services, ACA; Minnesota Agri–Growth Council, Inc.; AgCountry Farm Credit Services, ACA; Broiler and Egg Association of Minnesota; Farm Credit Services of Minnesota Valley, PCA; Minnesota Corn Growers Association; Minnesota Farm Bureau Federation; Minnesota Milk Producers Association; Minnesota Soybean Growers Association; Minnesota State Cattlemen's Association; and Minnesota Turkey Growers Association.

Charles E. Spevacek, William M. Hart, Meagher & Geer, P.L.L.P., Minneapolis, MN, for amicus curiae Complex Insurance Claims Litigation Association.

Considered and decided by HUDSON, Presiding Judge; RANDALL, Judge; and WRIGHT, Judge.

## OPINION

HUDSON, Judge.

This is an appeal from summary judgment in favor of respondent insurer on appellant's declaratory judgment action seeking a determination of coverage and an award for the costs of defending against a complaint alleging common law nuisance, trespass, and negligence related to the operation of appellant's pig farm. Appellant argues that the district court erred because: (1) the complaint alleged an "occurrence" within the meaning of the insurance policy; (2) the "pollution exclusion" did not preclude respondent's duty to defend; (3) the incidental-liability coverage for accidental spillage of agricultural chemicals and "damage to property of others" provided an independent basis for arguable coverage and triggered the duty to defend; and (4) the intentional-act exclusion was

not applicable. Appellant also argues that it is entitled to recover attorney fees and expenses it incurred in defending against the complaint, costs and disbursements, in addition to attorney fees resulting from this appeal. We affirm.

## FACTS

In 1994, Forst Farms entered into an agreement with appellant Wakefield Pork, Inc., under which Forst Farms agreed to construct and operate a confined-animal feeding operation for housing and feeding pigs owned by Wakefield. The Forst Farms' feeder/fattening pig operation stores the liquid animal waste in a two-stage outdoor concrete manure lagoon from which it is pumped and spread on area fields each autumn. The lagoon contains approximately 1.5 million gallons of manure. The Forst Farm is located approximately three quarters of a mile to the southeast of the residence of Gerald and Judy Wendinger.

In July 2001, the Wendingers filed a complaint against Forst Farms, Inc., and appellant. *Wendinger v. Forst Farms, Inc.*, 662 N.W.2d 546 (Minn.App.2003). Although the case was ultimately tried solely on a theory of nuisance, the initial complaint alleged negligence, nuisance, and trespass, and sought damages and injunctive relief. *Id.* at 549. In their complaint, the Wendingers alleged that the pig operation created "extremely noxious and offensive odors and gases" that caused and/or exacerbated their health problems, diminished their quality of life, curtailed their use and enjoyment of their property, and caused a decrease in the market value of their property.

Appellant approached its insurance company, respondent RAM Mutual Insurance Company, seeking defense and indemnification of the Wendinger complaint. Respondent declined to defend or indemnify for the Wendinger complaint because its policies "do not provide coverage for the actions complained of."

Appellant successfully defended itself against the Wendinger complaint but incurred significant costs in the process. As a result, in an October 13, 2004, declaratory judgment action, appellant alleged that respondent's denial of coverage was wrongful and sought $278,415.63 in defense costs and attorney fees, costs, and disbursements.

Both parties filed motions for summary judgment, which were heard on December 12, 2005. On March 10, 2006, the district court denied appellant's motion for summary judgment and granted respondent's cross-motion for summary judgment. The district court concluded that respondent did not have a duty to defend against the Wendinger complaint and that (1) there was no "occurrence" under the policy because "[h]aving made its decision to site open manure pits near an existing residence, with complete knowledge of the potential liabilities, [appellant] cannot claim that the Wendinger Action involved an 'accident' triggering [respondent's] duty to defend"; (2) "the Wendinger Action falls squarely within the boundaries of [respondent's] Policies' pollution exclusion"; (3) the insurance policy's incidental-liability endorsement does not apply because "the Wendinger Complaint alleged that the Wendinger's quiet enjoyment of their property had been curtailed" and the insurance policy "does not provide coverage for the insured's liability for damages due to the loss and enjoyment of property caused by an ongoing nuisance"; (4) the incidental coverage for spillage-of-agricultural-chemicals clause of the policy does not apply because "[t]he odors emanating from the Forst Farm hog facility were not alleged to be accidental or unexpected, and there is no way to construe the allegations

in the Wendinger Action as arising from an accidental or unexpected release of noxious odors from the Forst Farm feeding operation;" and (5) the policy's intended-acts exclusion "has no bearing on the outcome of the parties' motions." This appeal follows.

## ISSUES

I. Did the district court err by concluding that the Wendinger complaint did not allege an "occurrence" within the meaning of the insurance policy?

II. Did the district court err by concluding that the "pollution exclusion" precluded respondent's duty to defend against the Wendinger complaint?

III. Did the district court err by concluding that the incidental-liability coverage for accidental spillage of agricultural chemicals and/or "damage to property of others" did not trigger respondent's duty to defend?

IV. Did the district court err by concluding that there was a genuine issue of material fact with regard to whether the "intentional-act" exclusion precluded respondent's duty to defend if the duty were otherwise triggered?

## ANALYSIS

### I

 On appeal from summary judgment, this court "ask[s] two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law. On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted.

*Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). No genuine issue for trial exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997) (alteration in original) (quotation omitted). To defeat a motion for summary judgment, a party "must do more than rest on mere averments" and must establish a genuine issue for trial with substantial evidence. *Id.* at 69–71.

Appellant argues that the district court erred by concluding that the Wendinger complaint did not allege an "occurrence" as defined by the insurance policy and that the district court's conclusions were not supported by the record.

 "An insured may recover attorney fees from its insurer if such fees are incurred defending itself against claims by a third party when the insurer has a contractual duty to defend the insured, but has refused to do so." *Andrew L. Youngquist, Inc. v. Cincinnati Ins. Co.*, 625 N.W.2d 178, 187–88 (Minn.App.2001). Minnesota caselaw recognizes that "an insurer's duty to defend arises when any part of the claim against the insured is arguably within the scope of protection afforded by the policy." *Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406–07 (Minn.1998). The duty to defend "is contractual in nature and is determined by examining the complaint and the policy coverage." *Farmers Union Oil Co. v.*

*Mut. Serv. Ins. Co.*, 422 N.W.2d 530, 532 (Minn.App.1988).

An insurer bears the burden of establishing that "all parts of the cause of action fall clearly outside the scope of coverage" if it wishes to avoid its duty to defend. *Auto–Owners Ins. Co. v. Todd,* 547 N.W.2d 696, 698 (Minn.1996). But "[w]here there is no coverage by reason of an exclusionary clause, there is no obligation to defend." *Bobich v. Oja,* 258 Minn. 287, 293, 104 N.W.2d 19, 24 (1960). An insurance policy's exclusions are construed strictly against the insurer. *Thommes v. Milwaukee Ins. Co.,* 641 N.W.2d 877, 880 (Minn.2002). The interpretation of an insurance policy, including whether an insurer has a legal duty to defend or indemnify its insured, is a question of law, which this court reviews de novo. *Auto–Owners,* 547 N.W.2d at 698.

Here, the relevant portion of the insurance policy, entitled "Personal Liability (Coverage 'L')," reads:

> We pay, up to our limit, all sums for which an insured is liable by law because of bodily injury or property damage caused by an occurrence to which this coverage applies. We will defend a suit seeking damages if the suit resulted from bodily injury or property damage not excluded under this coverage.

The policy defines an "occurrence" as "an accident which is neither expected nor intended including continuous or repeated exposure to substantially similar conditions."

Appellant argues that there was an "occurrence" within the meaning of the policy because first, the policy defines an "occurrence" as something that is unintentional, and second, the complaint did not allege that appellant intentionally harmed the Wendingers. We agree.

The Minnesota Supreme Court has concluded that in order for an act to be excluded from coverage under an insurance policy as intentional, a court must find that the insured intended the harm, not merely that it intended to act. *Am. Family Ins. Co. v. Walser,* 628 N.W.2d 605, 612–13 (Minn.2001). "[W]here there is no intent to injure, the incident is an accident, even if the conduct itself was intentional" and "in analyzing whether there was an accident for purposes of coverage, lack of specific intent to injure will be determinative, just as it is in an intentional act exclusion analysis." *Id.* at 612.

We recognize that the facts of *Walser* are distinguishable, but the opinion speaks broadly and accordingly informs our analysis in this case. Thus, it is dispositive that here, neither party argues that appellant intended to harm the Wendingers. Moreover, respondent does not contest appellant's contention that it is in compliance with all state environmental regulations and county zoning and use ordinances. With that concession, it would be inconsistent for this court to acknowledge, on the one hand, that appellant's hog operation is legally operated and fully compliant with all applicable regulations, but to conclude, on the other hand, that appellant acted with a willful disregard or intent to harm its neighbors. Finally, respondent presumably knew that the operation of a pig farm which created approximately 1.5 million gallons of pig manure would likely result in some sort of odor. If respondent wanted to limit its coverage in this situation, it could have easily written it into the policy.

For these reasons, we conclude that the district court erred by concluding that there was no "occurrence" within the meaning of the insurance policy. Before finding a duty to defend, however, we must address whether the policy's exclusions op-

erated to preclude coverage of the Wendinger complaint.

## II

Appellant argues that the district court erred by concluding that the insurance policy's exclusions precluded respondent's duty to defend the Wendinger complaint because (1) the pollution exclusion applied to neither the damages the Wendingers claimed occurred within their home nor the Wendingers' personal injury claims; and (2) the pollution exclusion only applied to pollution of the atmosphere, not pollution of the air inside the Wendinger home.

 We first address whether the pollution exclusion applies to the Wendinger complaint. The pollution-exclusion provision of the insurance policy excludes from coverage any liability resulting either directly or indirectly from:

> [t]he discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or a water course, body of water, bog, marsh, ground water, swamp or wetland, except as provided by Incidental Liability Coverage (*Coverage "N"*).

 "Provisions in an insurance policy are to be interpreted according to both 'plain, ordinary sense' and 'what a reasonable person in the position of the insured would have understood the words to mean.'" *Farmers Home Mut. Ins. Co. v. Lill*, 332 N.W.2d 635, 637 (Minn.1983) (quoting *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn.1977)). "Fume" is defined by the American Heritage Dictionary as: "1. Vapor, gas, or smoke, especially if irritating, harmful, or strong. 2. A strong or acrid odor." *The American Heritage Dictionary* 734 (3d ed.1996).

The basis of the Wendinger complaint was harm from the "[g]ases, hydrogen sulfide among others," and the "noxious and offensive odors" that emanated from appellant's pig farm. Based on the plain meaning of the language in the contract, we conclude that the Wendinger complaint alleged damage from a substance that is plainly covered by the insurance policy's pollution exclusion.

 Furthermore, the insurance policy indicates that the pollution exclusion applies to the Personal Liability (Coverage "L") portion of the policy, which provides coverage for "bodily injury or property damage caused by an occurrence to which this coverage applies." The policy defines "property damage" as either "physical injury to tangible property including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." The Wendinger complaint alleged the loss of the use and enjoyment of their property, which is clearly encompassed by the policy's definition of "property damage."

 Next we consider appellant's argument regarding the scope of the word "atmosphere." Relying on *Bd. of Regents v. Royal Ins. Co. of Am.*, 517 N.W.2d 888 (Minn.1994), appellant argues that the pollution exclusion only applies to release of pollution into the atmosphere and not pollution of the air inside the Wendingers' home. We disagree. In *Bd. of Regents*, the supreme court addressed whether pollution exclusions excluded coverage for asbestos claims. *Id.* at 889. The underlying claims were asserted against a manufacturer of asbestos-containing fireproofing material and sought damages for the cost of removing the asbestos from the building. *Id.* They alleged that asbestos fibers in those materials were released from the

fireproofing materials that were installed inside a building. *Id.* at 891–92.

Differentiating between the pollution of the "atmosphere" and the pollution of the "air," the supreme court concluded:

> We are not saying here that air inside a building differs from the air outside, or that the inside and outside air do not intermingle. Rather, within the context of the pollution exclusion, the distinction is not in the air itself but where the air happens to be. . . . We conclude, therefore, that the term "atmosphere" in the pollution exclusion does not exclude coverage under the primary policies for the contamination or pollution of air within a building.

*Id.* at 893. However, the pollution alleged in *Bd. of Regents* was caused by asbestos and *originated* from inside a building. *Id.* at 891. *Bd. of Regents* did not address a situation where contaminants were released "into the atmosphere" from neighboring land and then contaminated or polluted air inside a building. Thus, the facts of this case are readily distinguishable. The Wendinger complaint did not allege damage from pollution that originated from within their home; the complaint was based on pollution released directly into the atmosphere that indirectly affected the inside of their house.

We conclude that the Wendinger complaint fell squarely within the insurance policy's pollution exclusion. "Where there is no coverage by reason of an exclusionary clause, there is no obligation to defend." *Bobich,* 258 Minn. at 293, 104 N.W.2d at 24. The pollution exclusion precluded respondent's duty to defend under the insurance policy regardless of whether the Wendinger action alleged an "occurrence."

## III

Appellant argues that two of the insurance policy's incidental-liability coverage provisions triggered respondent's duty to defend despite the pollution exclusions. Appellant argues that respondent had a duty to defend because (1) the Wendinger complaint alleged a "sudden or abrupt and accidental or unexpected" discharge of odor and because manure is an "agricultural chemical"; and (2) that the Wendinger complaint was covered by the "damage to property of others" provision of the policy.

■ We first address whether the Wendinger complaint alleged a "sudden or abrupt and accidental or unexpected discharge." The pollution-exclusion provision of the insurance policy excludes from coverage any liability resulting from the discharge of certain materials *"except as provided by Incidental Liability Coverage (Coverage 'N')."* (Emphasis added.) The incidental-liability coverage (*Coverage "N"*) portion of the policy contains a provision entitled "Accidental Spillage of Agricultural Chemicals":

> When the insured is liable, we pay for bodily injury or property damage or the cost of the cleanup and removal caused by the actual discharge, dispersal, release or escape of agricultural chemicals, liquids or gases, up to a limit of $50,000 per loss, subject to annual aggregate, used or intended for use in usual farming or agricultural operations when the discharge, dispersal, release or escape is both sudden or abrupt *and* accidental or unexpected.

This court has previously examined the meaning of similar language in the context of groundwater contamination and concluded that

> A release is "sudden" if "the incident at issue occurs relatively quickly rather than gradually over a long period of

time." The term "sudden" "carries the temporal connotation of 'abruptness.'" Numerous discharges of contamination that occur over an ongoing period of time do not constitute "sudden" releases, even if each release, by itself, could be termed sudden.

*Westling Mfg. Co. v. W. Nat'l Mut. Ins. Co.*, 581 N.W.2d 39, 45 (Minn.App.1998) (citation omitted), *review denied* (Minn. Sept. 22, 1998). Here, the Wendinger complaint alleged an ongoing, protracted discharge of offensive odor, not a series of isolated events. We apply the *Westling* definition of "sudden" and conclude that, regardless of whether manure is an "agricultural chemical," the escape of pollution in this case was not covered by the "accidental-spillage" provision of the policy because it was not a "sudden or abrupt and accidental or unexpected" discharge.

■ Next we consider appellant's argument that the district court erred by concluding that the Wendinger complaint was not covered by the "damage-to-property-of-others" provision of the incidental-liability coverage of the policy. The incidental-liability coverage contains a provision entitled "Damage to Property of Others" which reads, in relevant part:

> Regardless of an Insured's legal liability, we pay for property of others damaged by an Insured, or we repair or replace the property, to the extent practicable, with property of like kind and quality. Our limit for this coverage is $500 per occurrence.... The exclusions that apply to Coverages "L" and "M" do not apply to this coverage.

Here, the insurance policy does not define "damage to property of others," but we note that the provision only refers to repairing or replacing property and sets the limit of such coverage at $500. We adopt the district court's reasoning on this issue and conclude that this incidental-

liability coverage is meant to provide for "repair or replacement of damaged property" and not for "damages due to the loss and enjoyment of property," which is the type of damage alleged in the Wendinger complaint.

We conclude that because the Wendinger complaint did not fall within the "accidental-spillage" or "damage-to-property-of-others" provisions of the incidental-liability coverage, the district court did not err by concluding that these provisions did not trigger respondent's duty to defend.

### IV

Appellant argues that the district court erred by concluding that there was a genuine issue of fact concerning whether the insurance policy's "intentional-act" exclusion would preclude respondent's duty to defend if the duty were otherwise triggered by the Wendinger complaint. Because we conclude that respondent had no duty to defend under the insured's policy, we decline to address this issue.

■ Appellant also argues that it is entitled to attorney fees incurred as a result of bringing this action to recover attorney fees and costs associated with defending the Wendinger action. "A party may recover attorney fees and costs incurred in obtaining a declaratory judgment against an insurer for breach of its duty to defend." *Andrew L. Youngquist, Inc.*, 625 N.W.2d at 187 (citing *Morrison v. Swenson*, 274 Minn. 127, 138, 142 N.W.2d 640, 647 (1966)). Because respondent was under no duty to defend against the Wendinger action, appellant is not entitled to attorney fees.

### DECISION

The harm alleged in the Wendinger complaint was excluded by the insurance

policy's "pollution exclusion." It was not covered by the policy's incidental-liability coverage provisions. Accordingly, respondent had no duty to indemnify or defend against the Wendinger complaint.

**Affirmed.**