*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1729**

Jeffrey Alan Brouse, et al.,
Appellants,

vs.

Nationwide Agribusiness Insurance Company, et al.,
Respondents.

**Filed July 27, 2015
Affirmed
Reyes, Judge**

Marshall County District Court
File No. 45CV08301

William R. Sieben, James S. Ballentine, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota; and

Charles Daniel Miller, Speer Law Firm, P.A., Kansas City, Missouri (for appellants)

David C. Linder, Hilary J. Palazzolo, David P. McKinney, Larson • King, L.L.P., St. Paul, Minnesota (for respondents)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

On appeal from the district court's grant of summary judgment to respondents, appellants argue that the district court erred by (1) determining the absolute-pollution

exclusions in the insurance policies are unambiguous; (2) failing to apply the reasonable-expectations doctrine; and (3) granting summary judgment to respondents. We affirm.

## FACTS

In 2005, a group of investors operating as The Dairy Dozen-Thief River Falls, LLP purchased Excel Dairy, a dairy operation. The Minnesota Pollution Control Agency (MPCA) then received an expansion request from Excel and authorized the construction of an additional barn and two additional manure basins in March 2007. Unfortunately, as the district court found, "[t]he expansion did not go well," and Excel's neighbors complained of illnesses related to Excel's hydrogen-sulfide emissions. Eventually, Excel faced civil and administrative action by the MPCA and criminal charges by Marshall County, as well as other actions by the Minnesota Department of Health and the United States Environmental Protection Agency. In 2010, this court affirmed the MPCA's revocation of Excel's permit. *In re Dairy Dozen-Thief River Falls, LLP*, Nos. A09-936, A09-1406, 2010 WL 2161781, at *1 (Minn. App. June 1, 2010).

Appellants, who are Excel's neighbors, started this lawsuit in June 2008 against Dairy Dozen, alleging that "invasive, offensive, and noxious odors" were interfering with the enjoyment of their properties. Dairy Dozen filed for bankruptcy in April 2010. As part of the bankruptcy proceeding, the bankruptcy court identified respondents Nationwide Agribusiness Insurance Company and Farmland Mutual Insurance Company as Dairy Dozen's insurers. Dairy Dozen then agreed to assign its rights in its insurance policies to appellants, permitting appellants to sue respondents on its behalf. In return,

2

appellants agreed not to "levy execution or garnishment or collection" against Dairy Dozen.

In April 2013, appellants filed a second amended complaint against several defendants, including respondents, alleging that "[o]ffensive and noxious odors, particulate matter, flies and other insects emanating from the Excel Dairy facilities impaired [their] ability to use and enjoy their property and caused substantial damage to [their] quality of life."[1] Appellants sought a declaratory judgment that respondents had a duty under Dairy Dozen's insurance policies to pay appellants' damages. Respondents moved for summary judgment, arguing that the absolute-pollution exclusions in Dairy Dozen's insurance policies precluded insurance coverage for appellants' claims. Citing caselaw from this court, the district court agreed and granted summary judgment to respondents. This appeal follows.

## DECISION

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from an award of summary judgment, this court reviews de novo whether there is a genuine issue of material fact and whether the district court erred when it applied the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). We "view the

---

[1] Appellants later agreed to dismiss all other defendants from the lawsuit, and the district court filed a stipulation of dismissal.

evidence in the light most favorable to the party against whom summary judgment was granted." *Id.*

"Interpretation of an insurance policy, and whether a policy provides coverage in a particular situation, are questions of law that we review de novo." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co., Inc.*, 825 N.W.2d 695, 704 (Minn. 2013). "This court must construe an insurance policy as a whole and must give unambiguous language its plain and ordinary meaning. But when language in an insurance contract is ambiguous, such that it is reasonably subject to more than one interpretation, we will construe it in favor of the insured." *Mitsch v. Am. Nat'l Prop. & Cas. Co.*, 736 N.W.2d 355, 358 (Minn. App. 2007) (citations omitted), *review denied* (Minn. Oct. 24, 2007). Although the insured bears the burden of proof to establish coverage, the insurer bears the burden to show that an exclusion applies. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). If the insurer meets its burden, "the burden of proof shifts back to the insured because the exception to the exclusion 'restores' coverage for which the insured bears the burden of proof." *Id.* (quotation omitted).

**I.**

Dairy Dozen's 2005-2006 insurance policy excludes coverage for "[b]odily injury or property damage which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, release or escape of pollutants at any time." Under this policy, "[p]ollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Similarly, Dairy Dozen's 2006-2007 insurance policy excludes:

> Bodily injury or property damage, arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
> (1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . . [or]
> . . . .
> (2) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste[.]

This policy contains the same definition of "pollutants." Dairy Dozen's policies for 2007-2008, 2008-2009, and 2009-2010 follow the 2006-2007 policy language.

These provisions are absolute-pollution exclusions. *See id.* at 637 n.3 (explaining that absolute-pollution exclusions "eliminated" an exception for "sudden and accidental" pollution discharge found in earlier qualified pollution exclusions). Although the majority of jurisdictions limit these exclusions "to situations involving traditional environmental pollution," Minnesota follows the minority of jurisdictions in applying the exclusions literally and finding the terms clear, unambiguous, and not limited to traditional environmental pollution. *Id.* at 635. Minnesota applies "a non-technical, plain-meaning approach to interpreting pollution exclusions." *Id.* at 637 (quotation omitted).

Appellants first argue that the district court erred by finding the absolute-pollution exclusions unambiguous because the provisions do not specifically mention odors, smells, flies, insects, or rodents and the definition of "pollutants" "is so broad as to be

5

nearly meaningless."[2] We disagree. Minnesota does not require pollution exclusions to use specific words, as appellants suggest. *See Board of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 893-94 (Minn. 1994) (concluding that the exclusion provision applied to asbestos even though asbestos was not specifically mentioned in the provision); *Auto-Owners Ins. Co. v. Hanson*, 588 N.W.2d 777, 781 (Minn. App. 1999) (rejecting the argument that the exclusion provision did not apply to lead paint because "the insurer could have specifically excluded lead paint from coverage"), *review denied* (Minn. Apr. 20, 1999). And appellants' cited caselaw regarding broadness applies the majority rule, rather than Minnesota's minority approach. *See Wolters*, 831 N.W.2d at 635 (stating that *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir. 1992) applies the majority rule).

Applying Minnesota's "non-technical, plain-meaning approach," the absolute pollution exclusions here are not ambiguous. *See id.* at 637. Appellants fail to identify any caselaw (and we can find none) in which a Minnesota court has found an absolute-pollution exclusion ambiguous. *See id.* at 636-37 (holding that "pollutants" is unambiguous and that carbon monoxide is a "pollutant" under the exclusion); *Royal*, 517 N.W.2d at 892 (concluding that asbestos unambiguously falls within the exclusion's language about "other irritants, contaminants, or pollutants"); *Hanson*, 588 N.W.2d at 779 (concluding that "lead in paint falls within the policy's definition of pollutant"). Instead, appellants attempt to rely upon extrinsic evidence regarding the provisions'

---

[2] We note that appellants did not raise any allegations regarding rodents in their second amended complaint. We will only address those allegations appellants actually pleaded before the district court: (1) odors and (2) flies and other insects.

6

meanings.  But we can consider extrinsic evidence only after determining that a provision is ambiguous.  *Apple Valley Red-E-Mix, Inc. v. Mills-Winfield Eng'g Sales, Inc.*, 436 N.W.2d 121, 123 (Minn. App. 1989), *review denied* (Minn. Apr. 26, 1989).  Because appellants have failed to support their assertion that the provisions are ambiguous, we decline to consider appellants' extrinsic evidence.

## II.

Appellants next argue that the district court erred by failing to apply the reasonable-expectations doctrine.  The reasonable-expectations doctrine "protects the objectively reasonable expectations of the insured even if close study of the insurance policy would negate those expectations."  *Frey v. United Servs. Auto. Ass'n*, 743 N.W.2d 337, 342 (Minn. App. 2008).  But the doctrine does not apply absent "an ambiguity, a hidden major exclusion, or other special circumstances."  *Id.* at 343.

Appellants rely on *Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co.*, in which the supreme court held that, "in certain instances, such as where major exclusions are hidden in the definitions section, the insured should be held only to reasonable knowledge of the literal terms and conditions."  366 N.W.2d 271, 278 (Minn. 1985).  But the supreme court has more recently explained that the reasonable-expectations doctrine "has a very narrow application" and has suggested that its application is limited to the "unique situation" in *Atwater Creamery* where the policy's definition of burglary was really an exclusion hidden in the definition section.  *Wolters*, 831 N.W.2d at 639 n.4; *see also Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 49 (Minn. 2008) (stating that the doctrine "correct[s] extreme situations like that in *Atwater*, where a party's coverage is significantly different

7

from what the party reasonably believes it has paid for and where the only notice the party has of that difference is in an obscure and unexpected provision"). Because the pollution exclusion in *Wolters* "was plainly designated as an exclusion" and located in the exclusions section of the policy, the supreme court held that the reasonable-expectations doctrine did not apply. 831 N.W.2d at 639.

As in *Wolters*, the pollution exclusions at issue here are located in the exclusions section of the policies and are "plainly designated" as exclusions. *See id.* Any insured, therefore, would "reasonably expect the clause to limit coverage." *Frey*, 743 N.W.2d at 343. Given the caselaw and the absence of any ambiguity, hidden exclusion, or special circumstance, the district court properly declined to apply the reasonable-expectations doctrine here. *See id.*; *see also Royal*, 517 N.W.2d at 891 ("The reasonable expectation test is not a license to ignore the pollution exclusion in this case nor to rewrite the exclusion solely to conform to a result that the insured might prefer.").

## III.

Appellants argue in the alternative that, even if the absolute-pollution exclusions are unambiguous, there are genuine issues of material fact as to whether the odors at issue here fall within that exclusion.

In *Wakefield Pork, Inc. v. Ram Mut. Ins. Co.*, neighbors "alleged that the pig operation created 'extremely noxious and offensive odors and gases' that caused and/or exacerbated their health problems, diminished their quality of life, curtailed their use and enjoyment of their property, and caused a decrease in the market value of their property." 731 N.W.2d 154, 157 (Minn. App. 2007), *review denied* (Minn. Aug. 7, 2007). The pig

8

operation's insurance policy excluded liability resulting from the "discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants." *Id.* at 160. We analyzed the plain meaning of this language and concluded that the neighbors' complaint regarding gases and odors was "plainly covered by the insurance policy's pollution exclusion." *Id.*

Appellants suggest that *Wakefield Pork* was wrongly decided. But *Wakefield Pork* is a published decision of this court and remains precedential. Like the allegations in *Wakefield Pork*, appellants allege that "offensive and noxious odors" damaged the "use and quiet enjoyment of their lives, homes and properties." *See id.* at 157. Diary Dozen's insurance policies excluded coverage for pollutant "fumes," as did the policy in *Wakefield Pork*. *See id.* at 160. We defined "fume" as "[v]apor, gas, or smoke, especially if irritating, harmful, or strong" or "[a] strong or acrid odor." *Id.* (quoting *The American Heritage Dictionary* 734 (3d ed. 1996)). Based on this plain-meaning definition of "fume," we determined that the allegation regarding "noxious and offensive odors" was "plainly covered by the insurance policy's pollution exclusion." *Id.* As in *Wakefield Pork*, appellants' allegations regarding "offensive and noxious odors" fall within the plain language of the absolute pollution exclusions in Dairy Dozen's insurance policies. *See id.*

The absolute-pollution exclusions also encompass appellants' claims regarding flies and other insects. Under the exclusions, "pollutants" encompasses "any solid, liquid, gaseous or thermal irritant or contaminant," not just contaminants dispersed

through the air. "Contaminant" means "one that contaminates" and "contaminate" means "to make impure or unclean by contact or mixture." *The American Heritage Dictionary of the English Language* 406 (3d ed. 1992). Flies and other insects meet the plain-meaning definition of "contaminant" because they impaired appellants' use and enjoyment of their properties by making them "impure or unclean." *See id.*

Finally, appellants argue that a genuine issue of material fact remains regarding whether their claims arose out of the excluded pollutants.[3] Because appellants did not raise this argument to the district court, it is not properly before us. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." (quotation omitted)). Nevertheless, we note that appellants specifically alleged in their second amended complaint that the "[o]ffensive and noxious odors, particulate matter, flies and other insects emanate[ed] from the Excel Dairy facilities"; that the mishandling of waste "result[ed] in the breeding of hoards of flies and other insects that frequently travelled to [appellants'] properties"; and that "[t]he horrendous waste management practices at the Excel Dairy facilities caused and created the offensive and invasive odors, particulate matter, flies, other insects, and other emissions." Appellants themselves therefore alleged the necessary but-for causation. *See Progressive Cas. Ins. Co. v. Brockway*, 411 N.W.2d 13, 16 (Minn. App. 1987) (stating

---

[3] Appellants also argue that the district court's grant of summary judgment to respondents violates public policy. But appellants provide no support for this argument, and the supreme court has stated that, even though an absolute-pollution exclusion can create a "regrettably harsh" result, "the place to settle the public policy issues underlying th[e] exclusion is in the marketplace or by legislative action." *Wolters*, 831 N.W.2d at 638.

10

that but-for causation satisfies an arising-out-of provision and proximate cause is not required), *review denied* (Minn. Nov. 13, 1987). Even viewing the record in the light most favorable to appellants, no genuine issue of material fact remains regarding whether appellants' claims arose from Dairy Dozen's pollution and waste-management problems.

Because appellants' allegations fall within the plain meaning of the unambiguous absolute-pollution exclusions and no genuine issues of material fact remain, the district court did not err by granting summary judgment to respondents.

**Affirmed.**