# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-1373

———————————————

Soo Line Railroad Company, a Minnesota corporation, doing business as
Canadian Pacific

*Plaintiff - Appellant*

v.

Werner Enterprises

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: October 22, 2015
Filed: June 7, 2016

——————————

Before WOLLMAN, BYE, and GRUENDER, Circuit Judges.[1]

——————————

WOLLMAN, Circuit Judge.

A truck driven by a Werner Enterprises (Werner) employee struck a train
operated by Soo Line Railroad Company, doing business as Canadian Pacific

_____

[1]This opinion is being filed by Judge Wollman and Judge Gruender pursuant
to 8th Cir. Rule 47E.

(Canadian Pacific), causing a tanker car to spill the chemical it was carrying. Canadian Pacific sued Werner for the clean-up costs under theories of trespass, nuisance, and negligence. The district court[2] granted summary judgment to Werner on the trespass and nuisance claims, and the case proceeded to trial on the negligence claim. The jury returned a verdict for Werner, and the district court denied Canadian Pacific's motion for judgment as a matter of law or for a new trial. Canadian Pacific appeals, arguing that the district court erred in granting summary judgment on its trespass and nuisance claims, in denying its motion for summary judgment, in denying its post-trial motion, and in instructing the jury.[3] We affirm.

I.

At approximately 3:20 a.m. on March 31, 2012, Dale Buzzell was driving a Werner-owned truck northbound on U.S. Highway 59 toward Plummer, Minnesota. At the same time, a train operated by Canadian Pacific, which consisted of some 106 cars and a head-end and a trailing locomotive, was in the process of switching from one track to another in order to make room for another train headed in the opposite direction. The track that the train was switching to intersected with Highway 59. As the train approached the intersection, it was traveling at approximately five miles per hour to the southeast, and its engineer sounded the train's horn multiple times to signal the train's presence at the intersection. The intersection was equipped with crossing-guard signals, which began flashing as the train approached the intersection, and the locomotive was equipped with two sets of headlights that illuminated the area ahead of the train for approximately one-half mile.

---

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

[3]We grant Canadian Pacific's motion to supplement the record with the redacted version of Dr. Thomas Young's deposition transcript.

South of the highway-railroad intersection, Highway 59 curves slightly to the right for northbound drivers and straightens out approximately 535 feet from the intersection. Buzzell successfully navigated the curve leading to the railroad crossing, but did not slow down after the curve. He struck the ninth car of the train at approximately fifty-five miles per hour, derailing the train and puncturing the tanker car, which spilled aromatic concentrate (a 50% benzene solution) on the ground. Buzzell's truck caught fire, causing Buzzell to die from smoke inhalation.

Emergency responders extinguished the fire using chemical foam and water. The train's engineer, conductor, and a superintendent for Canadian Pacific testified that they observed skid marks leading up to the intersection, indicating that Buzzell had attempted to swerve to avoid the collision. State police completed a fatality report and an accident reconstruction report. The reconstruction report noted no skid marks or other evidence that Buzzell had attempted to avoid the collision. Dr. Mark Koponen, the medical examiner who performed Buzzell's autopsy, concluded that he died from smoke inhalation soon after the collision. The autopsy further revealed that Buzzell's heart exhibited signs that a blood clot had obstructed the blood flow in Buzzell's right coronary artery, which indicated the beginning stages of a heart attack. Dr. Koponen testified that the blood clot occurred before the collision and that it could have caused Buzzell to become incapacitated, but that he might not have experienced symptoms before becoming incapacitated. After ruling out other possible causes of the accident, including the possibility that the truck had experienced a mechanical failure, that Buzzell had committed suicide, or that Buzzell had been distracted or had fallen asleep, Dr. Koponen concluded that the "totality of the evidence" indicated that the collision was caused by Buzzell's experiencing "an acute cardiac event which led to his inability to control his motor vehicle."

Canadian Pacific incurred costs of $7.76 million in cleaning the hazardous materials from the accident site. After Werner refused a request for indemnification, Canadian Pacific brought suit, alleging that Werner was vicariously liable for the

damages caused by Buzzell's negligence and directly liable for its negligent supervision and retention of Buzzell. Canadian Pacific later amended its complaint to include nuisance and trespass claims.

Before the parties completed discovery, Canadian Pacific moved for summary judgment on all of its claims, arguing that Buzzell violated state traffic laws requiring drivers to yield to trains at a crossing and that the state-law violation constituted *per se* negligence. The district court denied the motion, holding that violations of state traffic laws are only *prima facie* evidence of negligence and that genuine disputes of material fact remained with respect to each of Canadian Pacific's claims. At the close of discovery, Werner moved for summary judgment on all claims, arguing that Canadian Pacific had not presented evidence sufficient to satisfy all of the necessary elements of its trespass and nuisance claims and that Werner's evidence that Buzzell was medically incapacitated at the time of the accident was sufficient to defeat Canadian Pacific's negligence claim. Canadian Pacific responded that Department of Transportation (DOT) regulations promulgated under authority granted by the Federal Motor Carrier Safety Act of 1984 § 206 (FMCSA), 49 U.S.C. § 31136, preempted Werner's state-law sudden-incapacitation defense. The district court granted Werner's motion on the nuisance and trespass claims and denied Werner's motion with respect to the negligence claim. It rejected Canadian Pacific's preemption argument, but concluded that there remained a genuine dispute over whether Buzzell was negligent.

The parties did not dispute the amount of damages, so the trial was limited to the issue of liability. Canadian Pacific proceeded on its claim that Buzzell was negligent in his driving and in his failure to report fatigue to his DOT-licensing physician. Both Werner and Canadian Pacific introduced expert testimony, with Werner's experts supporting the sudden-incapacitation defense and Canadian Pacific's experts concluding that it was impossible to rule out alternative explanations, such as driver fatigue or distraction.

The parties also disputed the significance of Buzzell's medical records, which included a diagnosis of "fatigue" in his primary care doctor's progress notes from August 13, 2010, September 2010, and December 2011; lab results from a blood test ordered because of the fatigue diagnosis; a list of medications indicating that Buzzell took vitamin supplements for fatigue; and rehabilitation-center progress notes from January 2012 noting that Buzzell had difficulty sleeping on his left side because of pain in his left shoulder. None of Buzzell's medical records, however, indicated that Buzzell had been diagnosed with a sleep disorder, nor did they provide context for whether his fatigue diagnosis affected his ability to drive. Canadian Pacific introduced a medical questionnaire from Buzzell's August 3, 2010, DOT-required driver-fitness examination, in which Buzzell indicated that he did not experience fainting, dizziness, "sleep disorders, pauses in breathing while asleep, daytime sleepiness, [or] loud snoring." Canadian Pacific presented testimony from an occupational medical physician, who testified that Buzzell violated federal regulations by failing to report to the DOT that his primary care physician diagnosed him with fatigue on August 13, 2010, and that Buzzell violated the regulations by denying having a sleep disorder during his driver-fitness medical examination with a DOT physician ten days earlier. Werner presented testimony challenging the accuracy of Buzzell's medical records, highlighting that they did not provide context for whether his fatigue diagnosis affected his ability to drive, and asserting that Buzzell's fatigue diagnosis did not constitute a sleep disorder.

The jury indicated on its special verdict form that Buzzell was not negligent in operating his truck and that he was not "negligent in failing to report fatigue to his [DOT]-licensing physician and to Werner Enterprises."

Canadian Pacific then moved for judgment as a matter of law or for a new trial, arguing that Werner had not presented sufficient evidence to support its sudden-incapacitation defense, that the evidence permitted only the conclusion that Buzzell negligently failed to report a fatigue diagnosis, and that the district court had

improperly denied its *per se* negligence instruction for violations of federal regulations. The district court denied the motion, and this appeal followed.

II.

A.  Trespass and Nuisance Claims

Canadian Pacific challenges the district court's grant of summary judgment to Werner on Canadian Pacific's trespass and nuisance claims. "We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." Bishop v. Glazier, 723 F.3d 957, 960-61 (8th Cir. 2013). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In granting summary judgment on Canadian Pacific's trespass claim, the district court concluded that Canadian Pacific had not presented any evidence that Buzzell acted with the requisite intent. For the nuisance claim, the district court concluded that a single act cannot constitute a nuisance under Minnesota law.

Canadian Pacific argues that it presented adequate evidence to survive summary judgment on its trespass claim because it showed that Buzzell intentionally hid his fatigue diagnosis from his DOT physician. Under Minnesota law, "a trespass is committed where a plaintiff has the 'right of possession' to the land at issue and there is a 'wrongful and unlawful entry upon such possession by defendant.'" Johnson v. Paynesville Farmers Union Coop. Oil Co., 817 N.W.2d 693, 701 (Minn. 2012) (quoting All Am. Foods, Inc. v. County of Aitkin, 266 N.W.2d 704, 705 (Minn. 1978)). Trespass is an intentional tort and requires that "a person 'intentionally enters . . . the land in possession of another.'" Id. (quoting Dan B. Dobbs, The Law of Torts § 50, at 95 (2000)). Canadian Pacific does not argue that Buzzell entered the intersection intentionally, and its theory that Buzzell intentionally hid a fatigue

diagnosis, even if true, was insufficient to make out a trespass claim. The district court thus properly granted summary judgment to Werner on that claim.

Canadian Pacific argues that the district court erred in its interpretation of Minnesota nuisance law. Werner responds that the question whether a single act can constitute a nuisance is irrelevant in light of the jury's finding that Buzzell was not negligent. In Minnesota, nuisance is a statutory offense. Minn. Stat. § 561.01 ("Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance."). The Minnesota Supreme Court has interpreted the statute to require that "there must be some kind of conduct causing the nuisance harm which is 'wrongful.'" Highview N. Apartments v. County of Ramsey, 323 N.W.2d 65, 70-71 (Minn. 1982) (quoting Randall v. Vill. of Excelsior, 103 N.W.2d 131, 134 (Minn. 1960)). In Wendinger v. Forst Farms, Inc., the Minnesota Court of Appeals concluded that the wrongful-conduct requirement was meant "to limit the scope of nuisance liability to situations in which the defendant can be said to be at fault," and that the requisite fault included "intentional harms and harms caused by negligence, [or] reckless or ultrahazardous conduct." 662 N.W.2d 546, 551 (Minn. Ct. App. 2003) (quoting Randall, 103 N.W.2d at 134). Because negligence was the only potential basis of wrongful conduct that was presented to the jury, its finding that Buzzell was not negligent is fatal to Canadian Pacific's nuisance claim.

## B. Negligence Claim

Canadian Pacific argues that regulatory violations constitute negligence *per se* under Minnesota law rather than only *prima facie* evidence of negligence and that the regulations promulgated under the FMCSA preempt state-law defenses.

The district court held that violations of FMCSA regulations were *prima facie* evidence of negligence rather than negligence *per se*. Under Minnesota law,

violations of state traffic laws are *prima facie* evidence of negligence. Minn. Stat. § 169.96(b) ("In all civil actions, a violation of any of the provisions of this chapter . . . shall not be negligence *per se* but shall be *prima facie* evidence of negligence only."). Although the statute refers only to violations under Chapter 169, Minnesota courts have extended the rule to violations of FMCSA regulations. Ruhland v. Smith, Nos. C7-91-668, C4-91-675, 1991 WL 257962, at *3 (Minn. Ct. App. Dec. 10, 1991) ("It would be anomalous to differentiate between traffic violations occurring under Minnesota law and those occurring under federal law."). Assuming that Canadian Pacific preserved its negligence-*per-se* argument and that it was correct about the proper standard, it nevertheless would not have been entitled to summary judgment because a genuine dispute of material fact existed over whether Buzzell was incapacitated at the time of the accident. See Seim v. Garavalia, 306 N.W.2d 806, 810 (Minn. 1981) ("[N]egligence *per se* is not liability *per se*.").

Canadian Pacific argues that the regulations promulgated under the FMCSA preempt Minnesota's sudden-incapacitation defense. Those regulations provide rules for the commercial trucking industry that are intended to promote highway safety. Under the regulations, a driver must submit to a physical exam every two years from a DOT-certified physician, during which he must self-report any medical conditions and thereafter, while on duty, carry his "medical examiner's certificate that he . . . is physically qualified to drive a commercial motor vehicle." 49 C.F.R. §§ 391.41(a), 391.42, 391.45. Drivers with certain diagnosed heart, respiratory, or mental health conditions that would interfere with the driver's ability to operate a commercial motor vehicle are not considered qualified. Id. § 391.41(b). Further, the regulations prohibit commercial drivers from driving while fatigued. Id. § 392.3. Despite the FMCSA's broad highway-safety purpose, Congress did not intend that it preempt state law more than necessary. See 49 U.S.C. § 31136(c)(2)(B) (requiring the Secretary of Transportation to minimize the extent to which the department's regulations preempt state law). Accordingly, the regulations permit application of state law when the federal statute and regulations are silent. 49 C.F.R. § 390.9

("Except as otherwise specifically indicated, subchapter B of this chapter is not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, the compliance with which would not prevent full compliance with these regulations by the person subject thereto.").

Federal preemption of state law can occur "through express language in a statute," or "through 'field' pre-emption or 'conflict' pre-emption." Oneok, Inc. v. Learjet, Inc., 135 S. Ct. 1591, 1595 (2015). Field preemption occurs where "Congress . . . intended 'to foreclose any state regulation in the *area*,' irrespective of whether state law is consistent or inconsistent with 'federal standards.'" Id. (quoting Arizona v. United States, 132 S. Ct. 2492, 2502 (2012)). Conflict preemption occurs where either "compliance with both state and federal law is impossible" or "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. (quoting California v. ARC Am. Corp., 490 U.S. 93, 100, 101 (1989)). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000). When determining whether federal law preempts state-law causes of action, we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig., 621 F.3d 781, 792 (8th Cir. 2010) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)).

Canadian Pacific argues that section 392.2 of the FMCSA regulations expressly preempts the sudden-incapacitation defense by providing that "if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation, the Federal Motor Carrier Safety Administration regulation must be complied with." 49 C.F.R. § 392.2. Canadian Pacific further argues that the FMCSA regulations preempt the sudden-incapacitation defense

because they occupy the field of commercial-driver safety. But the sudden-incapacitation defense is a defense, not a "standard of care," and thus section 392.2 does not apply. Moreover, in light of Congress's express intent to avoid preemption of state law, 49 U.S.C. § 31136(c)(2)(B); see also 49 C.F.R. § 390.9, we conclude that the FMCSA regulations do not foreclose state-law defenses to negligence claims.

Canadian Pacific argues that Minnesota's sudden-incapacitation defense conflicts with the FMCSA's purpose of promoting roadway safety by undermining the regulations' preventive measures. But the sudden-incapacitation defense is not an obstacle to the FMCSA's purpose and effects because the FMCSA is intended to reduce preventable highway accidents, and the sudden-incapacitation defense excuses only unforeseeable incapacitation. See Luke v. City of Anoka, 151 N.W.2d 429, 434 (Minn. 1967) (explaining that "no person . . . may be held liable for an accident . . . which could not have been reasonably foreseen or prevented by the exercise of reasonable care"). Canadian Pacific asserts that Luke does not apply because it held drivers only to the reasonable-care standard, while the FMCSA imposes a higher standard of care, requiring commercial drivers to mitigate the risks of medical emergencies. Regardless of the standard of care, however, sudden-incapacitation is available as a defense and does not interfere with the FMCSA's purposes.

Canadian Pacific argues that it is entitled to judgment as a matter of law on its negligence claim because Werner did not present evidence sufficient for a reasonable jury to conclude that Buzzell was suddenly incapacitated. We review *de novo* the district court's denial of a motion for judgment as a matter of law. Lee *ex rel.* Lee v. Borders, 764 F.3d 966, 971 (8th Cir. 2014). "In reviewing the sufficiency of the evidence to support the jury's verdict, we interpret the record in a light most favorable to the prevailing party, affirming unless no reasonable juror could have reached the same conclusion." Jackson v. City of Hot Springs, 751 F.3d 855, 860 (8th Cir. 2014) (quoting Structural Polymer Grp., Ltd. v. Zoltek Corp., 543 F.3d 987, 991 (8th Cir. 2008)). Werner introduced the expert testimony of Dr. Shannon Mackey-Bojack, a

-10-

cardiovascular pathologist, and, as earlier set forth, Dr. Koponen, the medical examiner who performed the autopsy on Buzzell's body. Both doctors concluded that Buzzell suffered from "an acute cardiac event" that caused him to lose consciousness, which ultimately caused the truck he was driving to collide with the train. In reaching that conclusion, both testified that, after taking into account the state's accident reconstruction report and other available documents, they had ruled out other potential explanations for the collision, including mechanical failure, suicide, distraction, and driver fatigue. Werner also introduced expert testimony from Ken Drevnick, an accident reconstructionist, who testified that incapacitation was the most likely cause of the collision. In reaching that conclusion, Drevnick reviewed the medical examiner's report and the state trooper's investigation report and opined that Buzzell did not apply the truck's brakes before hitting the train, that it was unlikely that water or firefighting foam would wash away skid marks, and that sudden incapacitation was the only plausible explanation for the collision. Canadian Pacific's experts concluded that there was insufficient evidence to rule out alternative explanations and that there could have been skid marks indicating a last-second avoidance maneuver. This testimony did not entitle Canadian Pacific to judgment as a matter of law, however, and when viewed in the light most favorable to Werner, the evidence was sufficient to enable a reasonable jury to find that Buzzell was incapacitated and therefore not negligent in operating his truck.

Canadian Pacific argues in the alternative that it is entitled to judgment as a matter of law on its claim that Buzzell violated FMCSA regulations by failing to disclose his fatigue diagnosis to a DOT physician. Werner presented testimony from Jamie Maus, Werner's Vice President of Safety and Compliance, who stated that under company policy and federal regulations, Buzzell was required to report potential fatigue problems only if his doctor ordered a sleep study, diagnosed him with a sleep disorder, or placed him on a work restriction, and that he was not required to report fatigue that developed after his examination by a DOT physician unless fatigue would have "impair[ed] his ability to safely operate a vehicle."

-11-

Moreover, Werner disputed the accuracy of Buzzell's medical records, suggesting that the fatigue diagnosis was listed as an active problem in his medical record only because of a clerical error and noting that his primary care physician did not include any treatment notes discussing the fatigue diagnosis, that fatigue is not a sleep disorder and was not listed on the DOT questionnaire, and that Buzzell's medical records lacked sufficient detail to determine whether Buzzell experienced fatigue while driving. Taken in the light most favorable to Werner, this evidence was sufficient to enable a reasonable jury to find that Buzzell did not suffer from a condition that he was required to report and that he thus was not negligent in not reporting his fatigue to Werner or the DOT.

## C. Jury Instructions

Canadian Pacific argues that the district court abused its discretion when it did not instruct the jury: "Violation of a federal regulation is negligence *per se*, unless the violator proves by a preponderance of the evidence that the federal regulatory violation was an act of God." The district court instructed the jury: "Violations of a traffic law or regulation is negligence, unless there is evidence tending [to] show . . . the person had a reasonable excuse or justification for breaking the law." In denying Canadian Pacific's motion for a new trial, the district court concluded that the instruction Canadian Pacific requested was an incorrect statement of the law because violations of federal regulations are *prima facie* evidence of negligence. "We review a district court's jury instructions for abuse of discretion." Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 327 F.3d 771, 781 (8th Cir. 2003). "Our review is limited in scope: we ask 'whether the instructions, taken as a whole and viewed in the light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury.'" Id. (quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 711 (8th Cir. 2001)). The primary issue at trial was whether Buzzell was incapacitated when his truck collided with Canadian Pacific's train, *i.e.*, whether a reasonable excuse or justification existed to

-12-

explain the accident.  We conclude that the district court's instructions adequately submitted the issues to the jury and that it did not abuse its discretion in denying the requested instruction.

III.

The judgment is affirmed.

_____