In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-1181

GREAT WEST CASUALTY COMPANY,

*Plaintiff-Appellee,*

*v.*

PAMELA K. ROBBINS, as Administratrix
of the Estate of Mike Douglas Robbins,
Deceased,

*Defendant-Appellant,*

*and*

WREN EQUIPMENT, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-00198 — **William T. Lawrence**, *Judge.*

ARGUED SEPTEMBER 9, 2015 — DECIDED AUGUST 16, 2016

Before EASTERBROOK, KANNE, and WILLIAMS, *Circuit
Judges.*

KANNE, *Circuit Judge*. In January 2011, Defendant Linda K. Phillips, an employee of Hoker Trucking, LLC, was driving a semi-truck that struck a vehicle driven by Mike Douglas Robbins in Indiana. Robbins died as a result of the injuries he sustained in the accident. At the time of the accident, the semi-truck driven by Phillips was pulling a trailer Hoker borrowed from Lakeville Motor Express, Inc. Lakeville had purchased an insurance policy from Plaintiff Great West Casualty Company to cover the trailer.

This case is not about the liability of Phillips or Hoker for the accident. That action was filed by Robbins's estate in an Indiana state court, and Phillips and Hoker were indemnified by Hoker's insurance policy. To preempt a possible claim against Lakeville's insurance policy, Great West filed this complaint for declaratory judgment against Hoker, Phillips, and Defendant Pamela Robbins, as administratrix of Mike Douglas Robbins's estate, amongst other defendants, seeking an order stating that it did not have to indemnify Hoker and Phillips for any liability in connection with the accident. After Robbins and Great West filed cross-motions for summary judgment, the district court granted summary judgment in favor of Great West and denied Robbins's motion. Finding no error with the district court's decision, we affirm.

## I.  BACKGROUND

On January 4, 2011, a tractor-trailer driven by Linda K. Phillips struck a vehicle operated by Mike Robbins in Richmond, Indiana. Robbins died from the injuries sustained in the accident. At the time, Phillips was an employee of Hoker Trucking, LLC, ("Hoker") and was driving the tractor-trailer in the course and scope of her employment when she struck Robbins's vehicle. Hoker is incorporated and based in Iowa.

Hoker owned the Peterbilt tractor driven by Phillips, but the trailer pulled by that tractor was on loan to Hoker from Lakeville Motor Express, Inc. ("Lakeville"), a company incorporated and based in Minnesota.

Lakeville, however, was not the actual owner of the trailer. Defendant Wren Equipment, LLC ("Wren") owned the trailer. Like Lakeville, Wren is incorporated and based in Minnesota. In July 2001, Wren leased Lakeville dozens of trailers, including the trailer involved in the accident, for five years. In exchange, Lakeville agreed to pay $22,600 per month and provide insurance coverage for the trailers. Upon the expiration of the five-year term, the lease converted to a month-to-month lease.

Karen Vanney, Lakeville's Vice President of Finance, averred that Lakeville continued leasing the trailer after the 2001 lease expired. In December 2009, Lakeville and Wren entered into another written lease agreement whereby Wren agreed to provide trailers to Lakeville, including the trailer involved in the accident, for a one-year term. Lakeville agreed to "provide insurance coverage, at its sole cost and expense, for public liability [and] property damage … with a minimum aggregate coverage of $1,000,000.00 for bodily injury and property damage per occurrence." Like the earlier agreement, the lease converted to a month-to-month lease after the expiration of the one-year term. According to Vanney, Lakeville continued to lease that trailer until 2013.

To satisfy its insurance-coverage obligations, Lakeville purchased a Commercial Lines Insurance Policy from Great West Casualty Company ("Great West") to provide automobile coverage. Great West is incorporated and based in Nebraska. Lakeville added Wren as an additional insured party

under the policy, which was in effect at the time of the accident. Hoker and Phillips were not named as insured parties under the Great West policy. Hoker was insured at the time of the accident by Northland Insurance Company ("Northland"). Northland provided primary coverage in connection with the accident.[1]

The Great West policy contains an endorsement providing that the policy's coverage will conform "with the provisions of the law or regulation to the extent of the coverage and limits of insurance required by that law or regulation" for the states in which Great West filed a "Motor Carrier Certificate of Bodily Injury or Property Damage Liability Insurance." Great West filed this certificate in Iowa, Illinois, Minnesota, North Dakota, and Wisconsin.

In December 2012, Pamela Robbins, as administratrix of the Estate of Mike Douglas Robbins, ("Robbins"), filed a complaint in Indiana state court against Hoker, Phillips, and Lakeville, alleging negligence. Lakeville has since been dismissed from that lawsuit.

Great West filed this action in February 2013 seeking a declaratory judgment that Great West was not liable to defend or indemnify Hoker or Phillips in connection with the accident. After obtaining default judgments in connection with several other defendants to the first complaint, Great West subsequently amended the complaint twice. The only relevant remaining defendants to the current dispute are Robbins

---

[1] Northland's policy has a per occurrence limit of $1,000,000, and Great West's policy limit per occurrence is $5,000,000.

and Wren. Wren, however, joined in Great West's arguments both at the district court and before us.

In June 2014, Robbins moved for summary judgment against Great West.[2] Great West responded by opposing summary judgment and cross-moving for summary judgment itself. The district court granted Great West's motion for summary judgment and denied Robbins's motion. In doing so, the district court determined that Great West's policy unambiguously excluded Hoker and Phillips as insured parties under the policy. This appeal followed.

## II. ANALYSIS

Robbins advances three arguments on appeal: (1) because Great West's policy is ambiguous as to whether Hoker and Phillips were excluded from coverage, we should construe the policy against Great West and find it covers Hoker and Phillips; (2) even if we find the exclusions under the Great West policy are not ambiguous, the policy exclusions nevertheless do not exclude Hoker and Phillips from coverage; and (3) regardless of whether the exclusions apply to Hoker and Phillips or not, such exclusions are invalid under Wisconsin law, the state where the trailer is registered.

We review *de novo* a district court's decision on cross-motions for summary judgment. *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005). In conducting this review, we construe all facts as well as all reasonable inferences

---

[2] Another defendant, Continental Western Insurance Company ("Continental"), joined in Robbins's motion for summary judgment. Continental provided insurance coverage for the vehicle driven by Michael Robbins at the time of the accident. It has elected not to appeal the district court's decision.

derived from those facts "in favor of the party against whom the motion under consideration was made." *Clarendon Nat. Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011). Summary judgment is appropriate where, after that review, we determine that the movant has demonstrated "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Our jurisdiction over this dispute is based on diversity of citizenship, 28 U.S.C. § 1332, which means that a federal court must apply the substantive law of the forum state—here, Indiana. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). A state's substantive law includes its conflict-of-law or choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Although Indiana choice-of-law rules apply, the parties posit that Minnesota law governs interpretation of the insurance contract, which was issued and delivered to a Minnesota-based company. Because Indiana's choice-of-law rules give broad discretion to parties to choose the applicable substantive law, *see, e.g.*, *Barrow v. ATCO Mfg. Co.*, 524 N.E.2d 1313, 1314–15 (Ind. Ct. App. 1988), and we see no reason why Minnesota law should not govern this contract dispute, we apply Minnesota law in interpreting Great West's policy.

*A. Ambiguity of Great West's Policy Exclusions*

We start with Robbins's argument that Great West's policy is ambiguous as to whether Hoker and Phillips are excluded from its coverage. Minnesota courts analyze insurance policies under general contract law principles. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). Whether an insurance policy or particular provision is ambiguous is a question of law. *Lott v. State Farm Fire & Cas. Co.*, 541

N.W.2d 304, 307 (Minn. 1995). "Language in a policy is am-
biguous if it is susceptible to two or more reasonable interpre-
tations." *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn.
2008). In making that determination, Minnesota law directs us
"not [to rely] upon words or phrases read in isolation, but ra-
ther upon the meaning assigned to the words or phrases in
accordance with the apparent purpose of the contract as a
whole." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567
N.W.2d 511, 515 (Minn. 1997). If language is susceptible to
two reasonable interpretations, then "it must be interpreted
in favor of coverage." *Wanzek Constr., Inc. v. Emp'rs Ins. of
Wausau*, 679 N.W.2d 322, 325 (Minn. 2004). Language, how-
ever, that is unambiguous "must be given its plain and ordi-
nary meaning," *Hubred v. Control Data Corp.*, 442 N.W.2d 308,
310–11 (Minn. 1989) (internal quotation marks omitted), as
Minnesota law does not permit a court to "read an ambiguity
into the plain language of a policy in order to provide cover-
age," *Jenoff, Inc. v. N.H. Ins. Co.*, 558 N.W.2d 260, 262 (Minn.
1997) (internal quotation marks omitted). If, however, an ex-
clusion would omit coverage required by applicable law, it
will not be enforced. *Am. Family Mut. Ins. Co. v. Ryan*, 330
N.W.2d 113, 115 (Minn. 1983).

The dispute here centers on a disagreement over the effect
of a September 2010 endorsement, which modified the pol-
icy's "Coverage" section of "WHO IS AN INSURED." With-
out the endorsement, the section read, in relevant part, as fol-
lows:

**1. WHO IS AN INSURED**

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

> (1) The owner or anyone else from whom you hire or borrow a covered "private passenger type" "auto."
>
> (2) Your "employee" or agent if the covered "auto" is a "private passenger type" "auto" and is owned by that "employee" or agent or a member of his or her household.
>
> (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
>
> (4) Anyone other than your "employees," partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees," while moving property to or from a covered "auto."
>
> (5) A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "private passenger type" "auto" owned by him or her or a member of his or her household.
>
> (6) Anyone described in paragraphs c., d. or e. below.

The endorsement has a heading that provides in capital letters: "This endorsement changes the policy. Please read it carefully. Changes—Who Is An Insured." The endorsement goes on to state the following:

The following is added to Section II—Liability Coverage—Paragraph A.1.b.—Who Is An Insured:

1. Anyone who has leased, hired, rented, or borrowed an "auto" from you that is used in a business other than yours.

2. Anyone that is using an "auto" of yours under a written Trailer Interchange Agreement.

Great West contends that this endorsement added to the category of persons excluded under subparagraph A.1.b., which would result in eight enumerated exceptions.

Robbins argues there is another reasonable interpretation of the policy exclusions after the endorsement, which is:

**1. WHO IS AN INSURED**

The following are "insureds":

a. You for any covered "auto".

b. 1. Anyone who has leased, hired, rented, or borrowed an "auto" from you that is used in a business other than yours.

2. Anyone that is using an "auto" of yours under a written Trailer Interchange Agreement.

Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner …

(2) Your "employee" …

(3) Someone using ….

(4) Anyone other …

(5) A partner …

(6) Anyone described …

According to Robbins, the estate's interpretation is reasonable because it avoids "duplication of numbers or renumbering of paragraphs." (Appellant Br. 22.) Robbins contends that Great West's interpretation requires the reader to "ignor[e] the conflicting numbers" under subparagraph A.1.b., as that subparagraph already had exclusions numbered "(1)" and "(2)." (*Id.*) Further, according to Robbins, the estate's interpretation is more reasonable than Great West's because it adds to and does not subtract from the definition of who is "insured" under the policy, which is consistent with Minnesota law construing ambiguities against insurance policies in favor of the insured.

But there is no ambiguity to construe against Great West. We agree with the district court that Great West's interpretation of this provision is the only reasonable reading. In interpreting the Great West policy and endorsement under Minnesota law, we must read them together "from the viewpoint of a layperson, not a lawyer." *Mut. Serv. Cas. Ins. Co. v. Wilson Twp.*, 603 N.W.2d 151, 153 (Minn. Ct. App. 1999). Robbins's interpretation would force us to abandon that position and read the policy language and endorsement as only a lawyer construing a contract could—in the most hyper-technical, over-analyzed sense. We refuse to adopt such a reading.

No reasonable interpretation would construe the endorsement as doing anything but adding two more enumerated exclusions under subparagraph A.1.b. The endorsement states "the following is *added*" to subparagraph A.1.b., (emphasis added), and it then provides two *numbered* provisions that are worded in a manner similar to the other enumerated exclusions. Nothing in the endorsement would lead a layperson to believe that Great West intended to modify the beginning of

subparagraph A.1.b. In fact, embracing Robbins's interpretation does the most violence to the policy language as it uses two "1"s and places two numbering conventions next to each other, which is not done anywhere else within the policy. Moreover, additional extensions of coverage are provided in sections A.1.c–A.1.e. If the endorsement intended to *extend* coverage, it could have added lettered subparagraphs to section A.1, rather than adding numbered subparagraphs to section A.1.b, a section that lists *exclusions* from coverage. Minnesota courts tend to reject interpretations like the one advanced by Robbins. *See, e.g.*, *Red & White Airway Cab Co. v. Transit Cas. Co.*, 234 N.W.2d 580, 582 (Minn. 1975) (refusing to adopt an interpretation of an insurance policy that "does violence to the plain meaning of the contract language").

Also making Robbins's reading unreasonable is that it makes the endorsement's additional language superfluous. Robbins's reading purports to add two more categories of individuals who are insured under the policy. The problem with Robbins's interpretation though is that the policy prior to the endorsement would have already included the two categories listed as insured, making the endorsement completely superfluous. Some redundancy in insurance contracts is normal, *see, e.g.*, *Horace Mann Ins. Co. v. Indep. Sch. Dist. No. 656*, 355 N.W.2d 413, 418 (Minn. 1984), while construing an endorsement to be completely superfluous is not, *see Jarvis & Sons, Inc. v. Int'l Marine Underwriters*, 768 N.W.2d 365, 371 (Minn. Ct. App. 2009) (rejecting an interpretation that would make an endorsement "wholly superfluous or require an absurd result").

Despite the obvious redundancies the estate's interpretation would create, Robbins nonetheless argues that Great

West's interpretation is unreasonable because the endorsement's two exclusions could both independently exclude Hoker and Phillips from the policy's coverage, making them redundant. Contrary to Robbins's position, the exclusions are not wholly redundant. For example, an individual could be an independent contractor hired by Lakeville to transport goods for Lakeville in furtherance of Lakeville's business. The first policy exclusion then would not apply. But if the independent contractor had a written trailer interchange agreement with Lakeville, then the exclusion would not extend the policy's coverage to that individual. And even if there is some overlap, Great West's interpretation does not make the entire endorsement itself superfluous. Indeed, it is consistent with the "belt and suspenders" approach often adopted by insurance companies in detailing exclusions in their policies. *See Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 68 (1st Cir. 2012) ("[I]nsurance policies are notorious for their simultaneous use of both belts and suspenders, and some overlap is to be expected."). Great West's interpretation is the only reasonable reading of the unambiguous policy and controls our analysis moving forward.

### B. Application of the Policy Exclusions

Even if we adopt Great West's interpretation of the policy, Robbins contends that neither Hoker nor Phillips are excluded from coverage by the September 2010 endorsement because: (1) the trailer interchange agreement did not cover the trailer involved in the accident and (2) the trailer was being used in Lakeville's business. We address each argument in turn.

*1. Written Trailer Interchange Agreement*

Robbins argues that there is insufficient evidence to conclude that the trailer involved in the accident was part of a "written trailer interchange agreement" between Hoker and Lakeville, rendering inapplicable the endorsement's second exclusion. Robbins is correct.

The evidence offered by Great West to support the assertion that the trailer involved in the accident was subject to a written trailer interchange agreement is: (1) a 2006 trailer interchange agreement between a "Shipper" and a "Carrier," and (2) Robbins's discovery admission that "the trailer that Phillips was pulling at the time of the Accident was being used under a Trailer Exchange Agreement between Hoker and [Lakeville]." The trailer interchange agreement offered by Great West does not indicate who the parties to the agreement are. Illegible signatures and handwriting appear below the signature blocks for the "Shipper" and "Carrier," which make it impossible to determine whether this is a "written trailer interchange agreement" between Lakeville and Hoker. As for Robbins's admission, it did not request Robbins to admit that the trailer interchange ("or exchange") agreement was written. The agreement could have been oral and therefore would not qualify for exclusion under the Great West policy.

Reviewing this evidence and drawing all reasonable inferences in the estate's favor, we find Great West has not produced sufficient evidence so as to leave no genuine issue of material fact regarding whether the trailer was subject to a "*written* Trailer Interchange Agreement."

*2. Trailer Used in a Business Other Than Lakeville's*

This conclusion, however, does not affect our decision to affirm summary judgment because the Great West policy endorsement excludes Hoker and Phillips as "[a]nyone who has leased …rented, or borrowed an 'auto' from you that is used in a business other than yours." For this exclusion to apply, Great West must demonstrate that: (1) Hoker and Phillips "rented" or "borrowed" (2) an "auto" (3) to be used in a business other than Lakeville's. It is uncontested that the trailer is an "auto" under the Great West policy, so we look to the other two elements of the exclusion.

Robbins's own discovery responses confirm that there is no genuine dispute over the fact that Hoker and Phillips "rented" or "borrowed" the trailer. The term "borrowed" is undefined in the policy. Where a term is undefined under a policy, Minnesota courts permit a court to consult a dictionary to determine the ordinary meaning of a word. *See Hubred*, 442 N.W.2d at 311; *Wakefield Pork, Inc. v. Ram Mut. Ins. Co.*, 731 N.W.2d 154, 160 (Minn. Ct. App. 2007). Rent means "to take and hold under an agreement to pay rent." Webster's Third New Int'l Dictionary. Borrow means "to receive temporarily from another, implying or expressing the intention of either of returning the thing received or of giving its equivalent to the lender." *Id.*

Robbins admitted in discovery that "the trailer that Phillips was pulling at the time of the Accident was being *used* under a Trailer Interchange Agreement between Hoker and [Lakeville]." In the same discovery responses, Robbins admitted that "Hoker was using the trailer owned by [Lakeville] with [Lakeville's] permission." Finally, in response to inter-

rogatories served by Great West, Robbins stated that Lakeville "was being paid for the use of the trailer." Taken together, the only two reasonable inferences from these statements are that: (1) Lakeville allowed Hoker to use its trailer in exchange for payment; and (2) Hoker temporarily possessed the trailer with the intent of returning it to Lakeville.

Having established that Hoker and Phillips "rented" and "borrowed" the trailer, we must determine whether the trailer was being used in a business other than Lakeville's. Robbins does not dispute that the trailer was being used in Hoker's business, which is moving freight. Instead, the estate contends that it was being used at the same time in furtherance of Lakeville's business, which also is moving freight.

To support its position, the estate relies on *Scottsdale Insurance Company v. Transport Leasing/Contract, Inc.*, 671 N.W.2d 186 (Minn. Ct. App. 2003), for the proposition that "Minnesota courts recognize that a vehicle may be used simultaneously in the business of two trucking companies." (Appellant Br. 32.) But, the court held, in order to find that the vehicle was used simultaneously, evidence must exist that demonstrates the insured entity had some day-to-day operational control over the other's business or drivers, including employment decisions, contact with the other company's customers, or sharing of revenue. *Id.* at 194.

There is no evidence here that Lakeville exerted that same level of control over Hoker and Phillips. Robbins relies on language from the trailer interchange agreement—the same one it contends does not apply to the trailer—to support its position that Lakeville had the requisite control. Notwithstanding the fact that we cannot determine who the parties to the agreement are, the provisions in the agreement do not establish that

Lakeville exerted any control over the manner in which Hoker moved freight or over its drivers. That Lakeville may have "assigned" work to Hoker does not mean that it had the right to determine how that work was performed or have any say in Hoker's employment decisions, including the choice of Phillips as a driver.[3]

The only reasonable inferences that can be drawn from the record is that Hoker "rented" and/or "borrowed" Lakeville's trailer and used it in furtherance of its own business, not Lakeville's. No facts give rise to a reasonable inference that on the day of the accident, the trailer was being driven in connection with Lakeville's freight-moving operations. Therefore, we find that this provision excludes Hoker and Phillips from coverage under the Great West policy.

---

[3] Robbins relies on *Canal Insurance Company v. Great West Casualty Company*, No. 11-772, 2013 WL 5275789 (D. Minn. Sept. 18, 2013), to argue that because the Great West exclusion itself is ambiguous as to whether it applies when a vehicle is being used simultaneously in the business of two parties, it must be construed in favor of granting coverage. But Robbins's argument rests on a faulty premise. Accepting the argument that the endorsement is ambiguous on the point of whether it applies to simultaneous business use does not mean that a court will just "grant coverage" to anybody. Rather, Robbins must show that she is eligible for having the ambiguity construed in her favor. The necessary prerequisite then is that she show the trailer was *in fact* being used "simultaneously." It was not. The court in *Canal Insurance* found that there was a triable issue of fact on whether the vehicle was being used "simultaneously" because the insured company exercised a significant degree of control over the particular vehicle involved in the accident. Here, however, we have no evidence that Lakeville exercised any significant degree of control over the trailer after it was in Hoker's possession.

*C. Wisconsin Law's Effect on Great West's Policy Exclusions*

Robbins's final contention is that notwithstanding the unambiguous policy language, Hoker and Phillips are covered under the Great West policy because Wisconsin law invalidates the exclusions in the September 2010 endorsement to the extent those provisions exclude permissive users. We disagree.

*1. Wis. Stat. § 632.32*

Under Wis. Stat. § 632.32(1), (3), "every policy of insurance issued or *delivered* in [Wisconsin]" must "provide that: (a) Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy." (emphasis added). The statute goes on to state that "[a] policy may limit coverage to use that is with the permission of the named insured." § 632.32(5)(a). Wisconsin courts have determined these two provisions in tandem "effectively impose[d] a *permissive* user requirement" in every automobile insurance contract "issued or delivered" in Wisconsin. *See Blasing v. Zurich Am. Ins. Co.*, 827 N.W.2d 909, 913 (Wis. Ct. App. 2013).

Robbins contends that Great West delivered Lakeville's policy for the purposes of § 632.32 when it filed its "Motor Carrier Certificate of Bodily Injury and Property Damage Liability Insurance" with the Wisconsin Department of Transportation. As such, Great West's policy must conform to Wisconsin law and cover permissive users like Hoker and Phillips, despite policy language that excludes them from coverage.

Wisconsin precedent suggests Robbins's interpretation is incorrect. In *Danielson v. Gasper,* 623 N.W.2d 182 (Wis. Ct. App. 2000), the court was confronted with the question of whether a policy issued and "delivered" to a Minnesota company nevertheless had to comply with the § 632.32's requirements because it contained an "Out of State Coverage" provision. The court found that § 632.32 "does not require a Minnesota insurer issuing a policy in Minnesota to comply with statutes established for policies issued in Wisconsin" and does not apply "to an insurance policy issued in Minnesota to a Minnesota resident." *Id.* at 185–86. In so holding, the court found the contract was "delivered" to a Minnesota resident who kept the covered vehicle in that state. *Id.* at 184.

Here, the insurance policy was issued and delivered to the Minnesota-based Lakeville by the Nebraska-based Great West. Wren, another Minnesota-based company, was added to the list of insureds under the policy. The facts here are sufficiently similar to *Danielson* that we see no reason to depart from it.

Robbins attempts to get around these similarities by suggesting that the individual in *Danielson* did not submit his insurance policy for approval with the Wisconsin Department of Transpiration. Robbins's position has a fundamental flaw: *Filing a certificate of insurance* with the Wisconsin Department of Transportation is not the same as *delivering an insurance policy* to an individual in Wisconsin. Certificates of insurance and insurance policies are not one and the same. The *Danielson* court construed the word "delivered" from § 632.32 to mean that a policy is "delivered" when it is sent to the policy-

holder. We decline to adopt Robbins's more expansive reading, as the estate has not directed us to any Wisconsin state precedent interpreting "delivered" in the way it suggests.

Robbins also attempts to circumvent *Danielson* by highlighting that the trailer was registered in Wisconsin. *Danielson* is silent on where the vehicle was registered. This fact is a distinction without a difference. As discussed above, the policy itself was not *delivered* in the state of Wisconsin. It was the certificate of insurance that was *delivered* in Wisconsin.

Alternatively, Robbins contends that even if the policy was not "issued or delivered" in Wisconsin, the Great West policy must still conform to Wisconsin statutory requirements, including § 632.32's requirement that the policy cover permissive users. For support, Robbins relies on *Amery Motor Co. v. Corey*, 174 N.W.2d 540 (Wis. 1970). There, the Wisconsin Supreme Court invalidated an exclusion in an insurance policy issued to a Minnesota company based on the fact that the policy contained an endorsement stating it would "conform the policy to the statutory requirements for common motor carriers of property [in Wisconsin], one of which requires the policy to comply with the omnibus statute." *Id.* at 542. According to Robbins, Great West's policy must also conform to § 632.32 because of the certificate of insurance it filed with the state of Wisconsin and the policy endorsement stating it would "comply with the provisions of the law or regulation to the extent of the coverage and limits of insurance required by that law or regulation" in Wisconsin.

But the court in *Corey* observed that "[w]hile these policies were issued in Minnesota they purport to be governed by Wisconsin law" as the result of a Wisconsin-specific endorse-

ment. *Corey*, 174 N.W.2d at 542. There is no such specific embrace of Wisconsin law contained in the Great West policy. Rather, there is a general endorsement that provides the policy will conform to the motor carrier financial responsibility laws in any state where the certificate is filed. In this case, this particular certificate has been filed in Wisconsin, Iowa, Illinois, Minnesota, and North Dakota. We do not interpret that general contract provision to constitute a wholesale incorporation of all five of those states' insurance laws unconditionally. Section 632.32 does not apply to the Great West policy.

### 2. Wis. Stat. § 194.41

Robbins also attempts to rely on Wis. Stat. § 194.41 to read a permissive-user requirement into the Great West policy. Unfortunately for Robbins, it is clear from the face of the statute that it does not apply to Lakeville's Great West policy. Section 194.41(1) mandates that motor carriers like Lakeville must "file with the department [of transportation] … an approved certificate for a policy of insurance" in order to obtain and maintain a valid registration and license for a trailer in Wisconsin. This policy must be "in such form and containing such terms and conditions as may be approved by the department issued by an insurer authorized to do a surety or automobile liability business in this state under which the insurer assumes the liability prescribed by this section with respect to the operation of such motor vehicles." *Id.*

It is not entirely clear whether this particular provision reads a permissive user requirement into every insurance policy that is certified with the Wisconsin Department of Transportation. We need not decide that question, however, as § 194.41 does not apply to Lakeville in the first instance. There

is an exception to § 194.41's compliance requirements for motor carriers who are "registered by another state under the unified carrier registration system consistent with the standards under 49 USC 13908 and 14504a." § 194.41(1). Lakeville legally possessed the trailer pursuant to a 2009 lease agreement with Wren and had agreed to register the trailer in Wisconsin. Robbins has not provided any evidence to contradict the sworn statement of Lakeville's representative concerning its obligation to register the trailer, and the documentation from the Wisconsin Department of Transportation indicates Lakeville is the primary lessee of the vehicle. Because Lakeville was a motor carrier registered under the unified carrier registration system in Minnesota at the time of the accident, its insurance policy did not need to comply with § 194.41.

The Wisconsin Court of Appeals applied this same statutory exception in *Sisson v. Hansen Storage Company*, 756 N.W.2d 667 (Wis. Ct. App. 2008), when it held that § 194.41 did not apply to invalidate an exclusion in an insurance policy because the insured company had registered under the unified carrier registration system in Iowa. We see no reason why the same logic should not apply here and exempt the Great West policy from § 194.41's reach.

Robbins attempts to avoid § 194.41's exclusionary language by relying on an unpublished Fifth Circuit opinion involving the same statute and Great West. In *Gulf Underwriters Insurance Company v. Great West Casualty Company*, the Fifth Circuit assumed that § 194.41 applied to a Great West policy issued and delivered to a *Wisconsin*-based company, and on those grounds, it invalidated an exclusion contained in the policy. 278 F. App'x 454, 457–59 (5th Cir. 2008). This case is

factually distinguishable. First, the Great West policy was is-
sued to a *Wisconsin*-based company and delivered to that
company in Wisconsin. The insurance policy at issue here was
issued and delivered to a Minnesota-based company. Second,
there is no indication in the facts that the Wisconsin-based
company registered under the unified carrier registration sys-
tem of another state.

Robbins's other efforts to have us apply § 194.41 are also
unpersuasive. The estate directs us to *Mullenberg v. Kilgust
Mechanical, Inc.*, 612 N.W.2d 327 (Wis. 2000), for the proposi-
tion that whenever an insurance company certifies a policy
"as proof of financial responsibility" in a state and the under-
lying policy states it will conform itself with applicable motor-
carrier financial responsibility provisions of any states where
the policy has been certified, its policy must conform to the
insurance laws of that state, even if the accident does not oc-
cur within that state's boundaries. Of course, *Mullenberg* does
not stand for this proposition. If it did, it would mean that
Robbins in this case could select from the insurance laws of
Iowa, Illinois, Minnesota, North Dakota, and Wisconsin, and
ask a court to apply the law of the state that is most favorable,
even if the accident and the parties had no connection to that
particular state other than the insurance company's certifica-
tion. That would be an absurd result.

The issue decided in *Mullenberg* was whether "the term
'negligent operation' requires insurers to cover the loading ac-
tivities of third-parties," which was part of the question certi-
fied by this court. *Id.* at 328. The Wisconsin Supreme Court

decided it did.[4] Importantly, the parties conceded that § 194.41 applied, and there was no indication that the insured was registered with the unified carrier registration system of another state.

Robbins also argues that we are focusing on the wrong company in determining whether § 194.41's exclusion applies. Rather than asking if the statute applies to Lakeville—a motor carrier—we should be determining whether it applies to Wren because, according to Robbins, it is a rental company within the meaning of § 194.41 and decided to register the trailer in Wisconsin. While it is true that § 194.41 applies with equal force to a "rental company," we do not believe § 194.41 applies to Wren here. The statute states that the motor "carrier *or* rental company" must have an "approved certificate for a policy of insurance" on file. § 194.41(1) (emphasis added). The statute does not require both the motor carrier *and* rental company to have an approved certificate of insurance on file. From the facts in the record, we know that prior to the accident Lakeville "was responsible for registration for operation of the trailer." The only reasonable inference then is that the application for registration on file was related to Lakeville's use of the trailer, as its obligation to obtain registration preceded the accident.

This conclusion is unaffected by the fact that Wren is listed as the owner in the 2010 registration because Lakeville is listed as the primary lessee. For the purposes of § 194.41, a

---

[4] The Wisconsin Supreme Court declined to answer our other certified question, which was "whether Wis. Stat. § 194.41 incorporates the Omnibus Statute, Wis. Stat. § 632.32, so that an insurer who issues and delivers a policy outside of Wisconsin must comply with the requirements of the Omnibus Statute." *Mullenberg*, 612 N.W.2d at 328.

lessee is considered the owner of the vehicle and the insurance policy when the lessee assumes all legal liabilities and control of the vehicle under the agreement. *Maas v. Ziegler*, 492 N.W.2d 621, 626 (Wis. 1992); *Cont'l Cas. Co. v. Transp. Indem. Co.*, 114 N.W.2d 137, 139 (Wis. 1962). The lease agreement here provided Lakeville with control and legal responsibility for the trailer, including insuring it. The owner of the vehicle and the policy for purposes of § 194.41 is Lakeville. Section 194.41 does not apply to Wren here. Therefore, the exception in question works to exclude Lakeville and the Great West policy from § 194.41's reach.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.